### In re Kathleen K. BELLWOAR, Debtor.

### No. 03–15455 SR.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 1, 2003.

Jeffrey Kurtzman, Klehr, Harrison & Harvey, Branzburg & Ellers LLP, Philadelphia, PA, Counsel for the Debtor.

Daniel Luke McAuliffe, DrinkerBiddle & Reath LLP, Philadelphia, PA, Counsel for Citibank.

Gary Seitz, Esqurie, The Bayard Firm, Wilmington, DE, George Conway, Esquire, Office of the U.S. Trustee, Philadelphia, PA, Chapter 7 Trustee.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction.

Before the Court are objections to certain exemptions claimed by the above Chapter 7 Debtor, Kathleen K. Bellwoar. The objections are interposed by Citibank, N.A., a creditor which the Debtor has scheduled as having a general unsecured claim against her in the disputed amount of $162,298.62.

As originally filed, Citibank's objections ran to a number of the Debtor's exemption claims. In a supplemental filing, however, Citibank retreated from all but the two which will be discussed herein. The Chapter 7 Trustee has filed a response in which he adopts Citibank's position vis a vis its two remaining objections and asks that his original report of "no assets" be withdrawn. The Debtor filed a written response in defense of her exemption claims and an evidentiary hearing was held on September 24, 2003. For the reasons which follow, the objections will be sustained in part and denied in part.

### Background.

The Debtor is a former partner in the accounting firm of Arthur Anderson & Company. As is widely known, the once prominent Anderson firm closed its doors after it was indicted for its role in the failure of Enron Corporation. Citibank is a creditor of Anderson and is asserting liability on the part of Anderson's former partners for Anderson's debt to it. Such a claim against the Debtor was apparently the impetus for her filing this case. Although married, the Debtor filed this Chapter 7 case individually.

The Debtor's exemption claims are set forth on Bankruptcy Schedule C. As permitted, the Debtor declined the federal exemptions available to her under 11 U.S.C. § 522(d) and instead elected the state exemptions described in 11 U.S.C. § 522(b)(2). With one exception, the Debtor's exemption claims are based on her ownership of the property in question as a tenant by the entireties with her spouse, H.Jay Bellwoar. The lone exception pertains to funds in a 401(k) retirement account which are owned by the Debtor individually, but which are claimed by her as exempt pursuant to 42 Pa.C.S.A. § 8124.

The two objections still at issue go to a small portion of the funds in the aforesaid retirement account and to the entirety of a $373,692.00 fund on deposit in an account with a securities brokerage firm. The essence of Citibank's objections is that the state laws which the Debtor invokes in support of her exemption claims do not entitle her to such exemptions. The Court will analyze each objection in turn.

### Discussion.

#### A. 401(k) Account

This objection can be dealt with quickly. The Debtor lists the value of the retirement account as $160,681 and claims the entirety thereof as exempt. At the hearing in this matter, Citibank reversed its position and agreed that the bulk of this fund is exempt for present purposes by virtue of 42 Pa.C.S.A. § 8124(b)(IX). However, Citibank argues that under 42 Pa.C.S.A. § 8124(b)(IX)(A), any funds contributed to the account in the one year preceding the Debtor's bankruptcy filing do not qualify for the exemption. Citibank presses its objection to that portion of the fund that does not qualify by virtue of this caveat to the statute in question. The Debtor concedes Citibank's legal theory, and acknowledges as well that approximately $12,000 was contributed to the retirement account within one year of her bankruptcy filing. The Debtor is agreeable to turnover of the non-exempt portion of the fund to the Chapter 7 Trustee, but the parties remain divided over whether the entire non-qualified amount must be turned over to the Trustee, or only that portion thereof which is available to the Debtor after deduction for deferred income taxes and/or the tax penalty which will be assessed against the Debtor by virtue of her early withdrawal of the funds. Because the amount in controversy is relatively small, the parties indicated to the Court that this aspect of their dispute may be considered resolved, subject to their requesting that the Court revisit the matter if it should become necessary for the Court to liquidate the precise amount to be turned over to the Trustee.

#### B. Securities Brokerage Account.

The Debtor's exemption claim with respect to the funds on deposit with UBS PW Securities is premised on her ownership of the funds as a tenant by the entirety with her spouse. Other things being equal, there is little question that entireties property cannot be reached by creditors of only one spouse and the Debtor would therefore be entitled to the claimed exemption. *See generally, Napotnik v. Equibank and Parkvale Savings Association,* 679 F.2d 316 (3d Cir.1982).

■ The rub here arises because Citibank maintains that the subject account is not in fact owned by the Bellwoars by the entireties. Citibank, as the objecting creditor, bears the burden of proving this contention. B.R. 4003(c); *Kaplan v. First Options of Chicago, Inc.* 189 B.R. 882, 888 (E.D.Pa.1995).

In support of its position, Citibank relies exclusively on the new account application

completed by the Bellwoars in 1992 with the predecessor of UBS PW, i.e., Kidder Peabody and Company. The application form (Exhibit D–1) has on its first page a box containing various abbreviations for the type of account being opened, with smaller boxes next to each abbreviation for a check mark. The abbreviation box checked on the Bellwoar application is "JT Ten." Next to this is an abbreviation box designated "Ten Ent." This box is not checked. Above this section of the form is another box entitled "Account Classification" and in this box are printed the words "JT Ten." On the strength of this, Citibank maintains that the Bellwoars have evinced an intent to hold the funds in this account as other than tenants by the entireties and thus the state law exemption for entireties property does not extend to the account. The Court disagrees.

■ Under Pennsylvania law, there is a strong presumption that property owned jointly by a husband and wife is held by them as tenants by the entireties. *See e.g., DeCoatsworth v. Jones,* 414 Pa.Super. 589, 595, 607 A.2d 1094, 1097 (1992), *aff'd in part and rev'd in part* 536 Pa. 414, 639 A.2d 792 (1994). Indeed, the presumption has been specifically applied to funds on deposit:

> Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband. [citation omitted]. The placing of the property in both

names, without more, creates an estate by the entireties. [citations omitted]. It is their actual marital status and not necessarily the words stated or omitted in the instrument that determines their right to take as tenants by the entirety. [citations omitted]. In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear and convincing evidence to the contrary. [citations omitted]. Even where a husband places the property in both names without his wife's knowledge or consent, a valid gift occurs. [citation omitted]. Likewise, if a husband acquires property with his own funds, and places it in the names of himself and wife, this constitutes a gift and an estate by the entireties, even though he exclusively receives the income therefrom during his lifetime. [citation omitted]. The same principles apply whether real estate, personal property or stocks and securities are involved.

*In re Estate of Holmes,* 414 Pa. 403, 406–07, 200 A.2d 745, 747 (1964); *accord Constitution Bank v. Olson,* 423 Pa.Super. 134, 142, 620 A.2d 1146, 1150–51 (1993).[1]

■ Citibank has failed to rebut the above-described presumption. As noted, the sole evidence offered in support of the proposition that the Bellwoars intended to hold the securities account other then by the entireties is the account application form. Each of the Bellwoars, however, testified that they hold, and have always intended to hold, all of their assets as marital property.[2] They further

---

1. The court notes that the Pennsylvania Supreme Court has intimated *in dicta* that the presumption may perhaps in some cases be rebutted by a preponderance of the evidence. *Sutliff v. Sutliff,* 518 Pa. 378, 386–87, 543 A.2d 534, 538–539 (1988).

2. It is undisputed that they do hold all other property in this fashion, with the exception of Mrs. Bellwoar's retirement account and one vehicle which is owned by Mr. Bellwoar alone and 2 vehicles which are leased by Mr. Bellwoar individually. The Court considers these deviations to be of scant probative weight

testified that they did not notice, let alone understand, the significance, if any, of the box which was checked on the new account application form, which form, although signed by the Bellwoars, was completed by a brokerage account representative. The Court credits the testimony of the Bellwoars in all respects. Moreover, the brokerage account representative responsible for the Bellwoar account also appeared at the hearing and testified credibly that it was his firm's standard operating procedure to automatically check the joint tenancy box for all new married couple accounts, without consultation with the applicant, and that this was what was done in the case of the Bellwoars. One plausible reason for this procedure may be that on page 2 of the pre-printed account application form, where the signature lines appear, there is no reference to a tenancy by the entireties account. Rather, there are signature blocks only for accounts opened as joint tenancies with the right of survivorship, or tenancies in common.

On the totality of this record, the Court is unpersuaded that Citibank has carried its burden of proof by a preponderance of the evidence, let alone by the higher standard of clear and convincing evidence, which present controlling authority mandates.[3] The Bank's objection to the exemption claim with respect to the securities brokerage account shall therefore be denied.

An appropriate Order follows.

#### Order

And Now, upon consideration of the Objection of Citibank, N.A. to the Debtor's claim of exemptions, all responses thereto, and after hearing held September 24, 2003, it is hereby:

Ordered, that the Objections be and hereby are sustained in part and denied in part, as follows:

The Objection to the exemptibility of funds deposited into the Debtor's 401K retirement account within the one year preceding the filing of her bankruptcy case is sustained. The Debtor shall turnover to the Trustee such funds as the parties mutually agree are subject to this ruling, without prejudice to the parties' right to request re-listing of this aspect of this dispute should they be unable to agree on the precise amount. The objection to the Debtor's claim of exemption to the UBS PW securities brokerage account is Denied for the reasons set forth in the within Opinion.

---

with respect to the question of ownership of the securities account.

3. "The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the trust of the precise facts of the issue.'" *Calle v. York Hospital*, 232 F.Supp.2d 353, 360–61 (M.D.Pa.2002)(quoting *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 781 A.2d 1172, 1179 (2001)).